BENTON, Judge,
concurring, in part, and dissenting, in part.
I concur in the portions of the opinion styled Background and Sufficiency, and I concur in the judgment reversing the conviction and dismissing the indictment. I dissent, however, from the conclusion that Jeffrey McNair consented to Detective Wells’ search of McNair’s bedroom for clues to the robbery.
“The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” U.S. Const, amend. IV. “In a long line of cases, [the United States Supreme] Court has stressed that ‘searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to *89 a few specifically established and well delineated exceptions.’ ” Thompson v. Louisiana, 469 U.S. 17, 19-20, 105 S.Ct. 409, 410, 83 L.Ed.2d 246 (1984) (citation omitted). “The landmark case of Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) established that no ‘crime scene exception’ to the warrant requirement exists.” Hunter v. Commonwealth, 8 Va.App. 81, 84, 378 S.E.2d 634, 635 (1989). See also Thompson, 469 U.S. at 21, 105 S.Ct. at 411 (reaffirming the Mincey holding that creating a crime scene exception for a warrantless search “‘is inconsistent with the Fourth and Fourteenth Amendments’ ”).
In Thompson, the record established that the petitioner shot her husband and then attempted to kill herself by taking a large quantity of pills. Before she lost consciousness, however, the petitioner called her daughter, who then called the police. The responding officers searched petitioner’s residence for additional victims or suspects. See 469 U.S. at 18, 105 S.Ct. at 409-10. This search uncovered no evidence. Later, two homicide investigators arrived and searched the residence for two hours for the purpose of finding evidence. During this search, the investigators found items which were later admitted into evidence against the petitioner at trial. See id. at 18-19, 105 S.Ct. at 409-10. The Supreme Court, in a per curiam opinion, reversed the conviction and rejected the government's contention that the petitioner, by making the call for assistance, had a “diminished expectation of privacy.” Id. at 22, 105 S.Ct. at 411-12. Specifically, the Court stated that the “[petitioner's call for help can hardly be seen as an invitation ... that would have converted her home into the sort of public place for which no warrant to search would be necessary.” Id.
In this case, the evidence proved that when the officers initially arrived at the “set of apartments” where McNair lived, they “met ... McNair right at the entrance of the apartments.” After McNair said “he thought that the individuals who had [committed] the robbery were still in the apartment,” the officers “went down to the apartment.” The officers entered McNair’s apartment and searched the apartment for possible robbers and victims. McNair’s suppression *90 argument would lack merit had the cocaine been recovered during this initial search. See Thompson, 469 U.S. at 22, 105 S.Ct. at 412. However, the test tube containing cocaine was not found during the initial search for robbers and victims. Instead, a detective who arrived sometime later, when the exigent circumstances no longer existed, found the test tube during a search undertaken specifically for the purpose of finding evidence. See id. at 21-22, 105 S.Ct. at 411-12.
In denying the motion to suppress, the trial judge made the following findings:
In this case Mr. McNair called the police relative to a robbery. They go there. They’re trying to make sure the place is safe. [The] ... officer in question, [Detective] Wells, was told the robbery had involved the bedroom. He went to the bedroom and looked for clues. McNair is in the house. In plain view [, Detective Wells] sees this in the closet.
I don’t think this is the same pattern as your cases. So I’ll overrule your motion.
The judge did not find that McNair consented to a search. The trial judge found, instead, that the entry was made “to make sure the place [was] safe.” Under well established rules, such a search has limited scope.
We should emphasize that ... a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.
Maryland v. Buie, 494 U.S. 325, 335-36, 110 S.Ct. 1093, 1099, 108 L.Ed.2d 276 (1990) (footnote omitted).
When the officers initially searched the residence for victims and the robbers, that warrantless search was a protective activity that was “ ‘strictly circumscribed by the exigencies which justified] its initiation.’ ” Mincey, 437 U.S. at 393, 98 *91 S.Ct. at 2413. See also Arizona v. Hicks, 480 U.S. 321, 325, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987) (noting that the officers “taking action, unrelated to the objectives of the authorized intrusion, which exposed "to view concealed portions of the apartment or its contents, did produce a new invasion of respondent’s privacy unjustified by the exigent circumstance that validated the entry”). The officers who initially made the protective search found no robbery suspects and arranged for an ambulance to remove from the apartment a person who needed assistance. Thus, well before the detective arrived, the police officers had assuaged their safety concerns during their initial search for victims and robbers.
As in Thompson, the following circumstance is applicable:
Petitioner’s attempt to get ... assistance does not evidence a diminished expectation of privacy on [his] part. To be sure, this action would have justified the authorities in seizing evidence under the plain-view doctrine while they were in petitioner’s house to offer ... assistance. In addition, the same doctrine may justify seizure of evidence obtained in the limited “victim-or-suspect” search discussed in Mincey. However, the evidence at issue here was not discovered in plain view ... during the “victim-or-suspect” search that had been completed by the time [the detective] arrived.
469 U.S. at 22, 105 S.Ct. at 412. The exigency clearly had ended because “[a]ll the persons in [McNair’s] apartment had been located before the investigating [detective] arrived there and began [his] search.” Mincey, 437 U.S. at 393, 98 S.Ct. at 2414.
In a recent per curiam decision, the Supreme Court again held, on facts similar to this case, that the rule announced in Mincey strictly limits the scope of a warrantless “crime scene” search. See Flippo v. West Virginia, — U.S. —, 120 S.Ct. 7, 145 L.Ed.2d 16 (1999). The facts in Flippo are as follows:
One night in 1996, [Flippo] and his wife were vacationing at a cabin in a state park. After [Flippo] called 911 to report that they had been attacked, the police arrived to *92 find [Flippo] waiting outside the cabin, with injuries to his head and legs. After questioning him, an officer entered the building and found the body of [Flippo’s] wife, with fatal head wounds. The officers closed off the area, took [Flippo] to the hospital, and searched the exterior and environs of the cabin for footprints or signs of forced entry. When a police photographer arrived at about 5:30 a.m., the officers reentered the building and proceeded to “process the crime scene.” ... According to the trial court, “[a]t the crime scene, the investigating officers found on a table in Cabin 13, among other things, a briefcase, which they, in the ordinary course of investigating a homicide, opened, wherein they found and seized various photographs and negatives.”
Id. at —, 120 S.Ct. at 7. Relying on Mincey and Thompson, the Supreme Court reversed the trial judge’s denial of Flippo’s motion to suppress. The Court again “noted that police may make warrantless entries onto premises if they reasonably believe a person is in need of immediate aid and may make prompt warrantless searches of a homicide scene for possible other victims or a killer on the premises ... but ... rejected any general ‘murder scene exception’ as ‘inconsistent with the Fourth and Fourteenth Amendments.’ ” Flippo, — U.S. at —, 120 S.Ct. at 8.
On this appeal, the Commonwealth attempts to justify the search of McNair’s apartment based on consent. However, the trial judge made no finding that the search was based on McNair’s consent. The principle “is well settled that the burden is on the Commonwealth to establish an exception to the warrant requirement.” Walls v. Commonwealth, 2 Va.App. 639, 645, 347 S.E.2d 175, 178 (1986). “ ‘Consent to a search ... must be unequivocal, specific and intelligently given ... and it is not lightly to be inferred.’ ” Elliotte v. Commonwealth, 7 Va.App. 234, 239, 372 S.E.2d 416, 419 (1988) (citation omitted). Thus, whenever the Commonwealth alleges that a search was consensual, “[t]he [Commonwealth] ... bears the burden of establishing consent and this burden is heavier where the alleged consent is based on an implication.” Walls, 2 Va.App. at 645, 347 S.E.2d at 178. The Common *93 wealth’s “burden ... is not satisfied by showing a mere submission to a claim of lawful authority.” Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); see also Bumper v. North Carolina, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968).
The trial judge’s failure to find that the search of McNair’s apartment was based on consent should dispose of the Commonwealth’s claim. Although McNair informed the initial responding officers that the robbers might still be in his apartment, no evidence proved that he consented to a search. Simply put, there was no consent.
Even if McNair may be deemed to have tacitly consented to those officers entering his apartment for the purpose of removing the robbers and securing the premises, a proposition the majority assumes without the benefit of a finding by the trial judge, to assume further that McNair consented to having his residence searched a second time for clues, after the search for the robbers and victims had terminated, would grant the government power above and beyond that which is constitutionally permitted. A search beyond the scope of the consent given is an unreasonable search. See Bolda v. Commonwealth, 15 Va.App. 315, 319, 423 S.E.2d 204, 207 (1992). Moreover, the Supreme Court has ruled that “[t]he scope of a search is generally defined by its expressed object.” Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991). By indicating his fear that the robbers might still be in his apartment, McNair only sought to assist the police in their search for the robbers. When the officers completed the search and found no robbers, they had exhausted the scope of their authority to search. “The government may not exceed the boundaries of the consent, and any evidence gathered beyond those boundaries must be excluded.” United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir.1992).
' The undisputed evidence proved the detective did not ask for or receive McNair’s consent to search the apartment for evidence. The detective asked the officers who had first searched the apartment whether they had looked for “clues to *94 the robbery scene.” The detective testified that he “didn’t directly speak with [McNair] in regards to the robbery.” When he went upstairs to make a further search, he “was just looking at the scene as a robbery scene.” Cf. Mincey, 437 U.S. at 395, 98 S.Ct. at 2415 (holding that a warrantless search conducted pursuant to a crime “scene exception ... is inconsistent with the Fourth and Fourteenth Amendments”). This evidence clearly established that the detective’s search was unlawful because it was based on neither lawfully obtained consent nor a search warrant. See Thompson, 469 U.S. at 22-23, 105 S.Ct. at 411-12. Thus, the search was an unreasonable violation of McNair’s privacy interest.
Furthermore, no evidence proved that McNair was aware that the detective intended to search the apartment. Although the evidence proved the detective asked the other officer whether the residence had been searched, the record fails to indicate that McNair heard the question, knew that the detective intended to go upstairs, or was aware that the detective went upstairs. Thus, the evidence does not prove either McNair’s knowledge of or acquiescence in the detective’s search. Moreover, acquiescence, without more, is insufficient to prove consent. See Crosby v. Commonwealth, 6 Va.App. 193, 199, 367 S.E.2d 730, 734 (1988). McNair never consented to a search of his residence. Consent could only be found in this case by assuming facts not proved by the evidence. Such an assumption impermissibly relieves the Commonwealth of its heavy burden of proving consent.
The trial judge’s decision to admit as evidence the cocaine discovered by the police in McNair’s apartment was error because the cocaine was found during a warrantless search conducted without consent or exigency. Thus, I dissent from the portion of the majority opinion affirming the trial judge’s refusal to suppress the evidence.
I concur in the remainder of the opinion, however, and in the judgment reversing the conviction and dismissing the indictment. ■