## CIRCUIT COURT OF AUGUSTA COUNTY

Commonwealth of Virginia

v.

Michael Stuart Johnson

June 15, 2012

Case No. CR12000030-00

By Judge Victor V. Ludwig

I am writing to inform the parties of the Court's decision concerning Mr. Johnson's Motion to Suppress, which the parties argued on March 12, 2012. For the reasons recited in this letter, I grant the motion.

*Findings of Fact*

On June 18, 2011, Deputy Carter of the Augusta County Sheriff's Department received an alert regarding a vehicle that was swerving. Carter followed the vehicle and observed that the driver turned without signaling, weaved, and again turned without signaling. Carter initiated a traffic stop. The Defendant, Michael Stuart Johnson, was the operator of the vehicle. Carter asked Johnson to exit the vehicle, and Johnson consented to a search of the vehicle. (Johnson does not challenge the validity of this search.) As a result of the vehicle search, Carter found a small black box and four cigar-shaped items of a green leafy substance behind the passenger seat. Carter

then asked Johnson what the items were, and Johnson admitted that they included marijuana.

By that time, Corporal Roane had arrived on the scene. At Roane's request, Johnson consented to a search of his person, during which Roane felt a wallet in Johnson's back pocket. Roane asked Johnson to remove the wallet, and Johnson refused. Shortly after that, Carter approached Roane and Johnson with what Johnson acknowledged to be marijuana from the vehicle, and Roane again asked to search the wallet, and, again, Johnson refused. Because Roane felt that the deputies had reached the "point of probable cause,"[1] he searched the wallet in spite of Johnson's refusal. Carter testified that, while he was searching the vehicle, he heard Johnson decline to give consent to the search of the wallet. He testified further that he could not clearly recall the dialogue between Roane and Johnson as he approached them to inquire about the items he had discovered during the search of the vehicle, but he said that he would have remembered if Johnson had given consent to the search of the wallet. In the wallet Roane found two round blue tablets, later identified as methylenedioxymethamphetamine, a Schedule I or II controlled substance.

Roane's testimony on the issue was candid but equivocal with respect to the details of how the wallet came into his possession:

A. I asked [Johnson] if he had anything on [sic] and if I could search his person and he allowed me to search. I felt his wallet in his back pocket and asked him to pull it out, and he refused to pull it out. . . .

A. A short time later, Deputy Carter came to me with drugs that were located in the vehicle and I asked Mr. Johnson again to search his wallet and he refused and I told him that we were at the probable cause level and he allowed me to search.

Q. [D]id he ever say here go ahead and search or did he just give you the wallet after you said you are at the probable cause level?

A. I don't – I don't remember his exact words. . . .

Q. So he never explicitly told you that he was consenting to the search of the wallet . . . ?

A. When I asked him to pull his wallet out the first encounter, he refused.

Q. Okay. And he didn't say anything later that contradicted that?

---

[1] Presumably, he referred to probable cause to search (because that is what he did) rather than probable cause to arrest (because he did not do that until after the search).

A. I asked him a second time and he refused and that's when Deputy Carter approached me with the pill bottle with two pills or several pills in it and then the marijuana and that's when I told him that we were at the probable cause level and that's when he allowed to. . . .[2]

Q. Okay. And at that point, you told Mr. Johnson that you were at the probable cause stage, correct?

A. Yes.

Q. So you didn't need his consent any more?

A. Correct

Q. So you didn't ask for any?

A. Uh – it was a brief conversation with him, I don't recall exactly.

The only substantial discrepancy (if it is a discrepancy) between Roane's testimony and Johnson's is that Johnson testified that his wallet was already out of his pocket and on the hood of Roane's cruiser when Carter approached them. In response to Roane's request for permission to search the wallet, Johnson's testimony was that he said: "[n]o I don't want you to look at my wallet because you've already seen everything that was in it because it fell all over the hood of your cruiser. . . ." Johnson said "When he handed my license back I went to put it in my wallet and actually my money fell out and a couple of business cards fell out on the hood of the car, and I just kind of shuffled them back up in my wallet and closed it back up and still laid it on the hood of the cruiser." He then heard Roane make the comment about being "at the probable cause stage," and Roane then examined the contents of the wallet.

Although I am not certain that it is of any consequence to the Court's analysis in this case whether the wallet was in Johnson's pocket and retrieved by Roane or whether the wallet was on the hood of Roane's cruiser immediately prior to his search of it. Because of Roane's candid equivocation and Johnson's certain testimony, the Court finds as a fact that the wallet was on the cruiser at the time Roane searched it.

Roane confirmed that the deputies did not arrest Johnson for possession of marijuana, and it was not until Roane found the tablets in the wallet that they arrested him for possession of methamphetamine.

*Analysis*

---

[2]    Roane did not articulate what Johnson "allowed," but the Court infers that it was for the removal of the wallet from his pocket.

On a motion to suppress, the Commonwealth has the burden to prove, by a preponderance of the evidence, that the evidence seized is admissible. *Colorado v. Connelley*, 479 U.S. 157 (1986). The Commonwealth's burden, however, requires that it address only the challenges of the search raised by a defendant's motion. *See Vaughn v. Commonwealth*, 279 Va. 20 (2010). Johnson moves to suppress certain evidence gathered on June 18, 2011, arguing that the evidence was gathered without probable cause, a search warrant, or consent. Def. Mot. ¶ 4.

As an initial matter, it was uncontested that the deputies had consent to search Johnson's vehicle and his person, but they did not have consent to search his wallet unless that consent was implicit in Johnson's consent to search his person. The question of whether a search pursuant to consent is reasonable depends on whether the search "is within the scope of the consent given." *Grinton v. Commonwealth*, 14 Va. App. 846, 850 (1992). Further, once a suspect has withdrawn his consent to search, the Fourth Amendment is implicated. *Jackson v. Commonwealth*, 1997 Va. App. LEXIS 654, *2 (Va. App. Nov. 4, 1997).

Note that, despite the Court of Appeals' conclusion in *Jackson* (which, because it is unreported, is not binding precedent), probable cause to search must be pursuant to a search warrant or one of the warrant exceptions. In *Jackson*, the Court of Appeals allowed the admission of evidence gathered from a personal search based on probable cause, but without a warrant. This conclusion appears to be based on several cases that are not precisely on point and none of which supports the holding in *Jackson*. Each case cited, in fact, supports the presumption that, once consent is withdrawn, the police need either a search warrant or probable cause coupled with one of the recognized warrant exceptions. *Camden v. Commonwealth*, 17 Va. App. 725 (1994) (finding probable cause to conduct a search of a wallet after finding a smoking device for marijuana during a consent search of the suspect's person, not addressing finding contraband as a result of a consent search of a vehicle); *Payne v. Commonwealth*, 14 Va. App. 86 (1992) (suppressing the evidence on the ground that the police did not have adequate suspicion to conduct a *Terry* search); *Florida v. Bostick*, 501 U.S. 429 (1991) (finding that the police had probable cause to search a vehicle under the vehicle search exception). None of these cases supports the proposition that a police officer may, absent a warrant exception, conduct a search of an individual's person based solely on probable cause to search. In any event, although not constituting a recognized exception to a search without a warrant (and therefore not justifying the search), in *Jackson*, the search was based on information from a reliable informant, the discovery of drugs on Jackson's companion, and Jackson's flight when the officers began to search him, none of which is present in the case at bar.

The law is clear that consent to a search of the person is not blanket consent to a search of everything that might be found on the person, and the individual who has voluntarily given consent may also withdraw it. In *Camden v. Commonwealth*, 17 Va. App. 725 (1994), a case cited by the Commonwealth for a different proposition, Camden had voluntarily given consent to the officers to conduct a pat-down search for weapons, and the Court held that his consent to that limited search did not constitute consent to "an intrusive search of areas where the officer had no reason to believe that weapons might be secreted, such as his wallet." *Id.* at 727. The implication of that observation is that, without more, Camden was entitled to withdraw his consent to a continued or more intrusive search; hence he could validly withdraw his consent when his wallet became the focus of the search.

The Court finds, on the testimony of the parties and in light of the Commonwealth's burden of proof, that Johnson did withdraw his consent to a further search of his person (including his wallet) prior to Roane's having found any incriminating evidence on his person. Accordingly, the deputy did not have consent to search Johnson's wallet, either because he exceeded the consent Johnson initially gave or because Johnson withdrew consent to search as it applied to his wallet. Absent consent (and because it is conceded that there was no warrant), the search was consistent with the Fourth Amendment only if the circumstances justified application of one of the well-established exceptions to the warrant requirement. See *supra*.

As I have noted, the Commonwealth cites *Camden v. Commonwealth*, not for its holding regarding the withdrawal of consent, but in support of its argument that the discovery of marijuana in the vehicle gave rise to the reasonable belief that Johnson would have evidence of a crime on his person. In *Camden*, however, the probable cause component came, not from any discovery in the vehicle but from evidence found during the consensual pat-down search of Camden's person. While engaged in that pat-down, the officer felt an object that he reasonably believed might be a weapon but, when removed, proved to be a pipe for smoking marijuana. Only then did Camden state that he withdrew his consent and attempt to protect his wallet from a being seized by the officer. However, despite the attempted withdrawal of consent, the Court held that the discovery of the pipe "gave the police officers probable cause that [Camden] possessed drugs for use in the pipe." *Id.* at 728. Under those circumstances, the "officer was entitled to search Camden wherever the officer reasonably believed that drugs might be secreted, including Camden's wallet." *Id.* Finally, it was the "exigency of the situation presented by a roadside stop" that justified the search of Camden "*after* probable cause arose. . . ." *Id.* (emphasis added). Hence, in *Camden*, the officers had (a) probable cause arising from the discovery of the pipe on Camden's person and (b) a recognized exception to the warrant requirement.

In the case at bar, the search of Johnson's person uncovered neither contraband nor even anything suspicious. The only reasonable justification for a search of the wallet after Johnson withdrew his consent, based on the evidence before this Court, was the discovery of marijuana in the vehicle.

Johnson's refusal to consent, or his withdrawal of consent, cannot alone furnish a basis for finding probable cause to search his wallet. See *Florida v. Royer*, 460 U.S. 491, 498 (1983) (stating that a person's refusal to listen or to answer police questions does not furnish "reasonable, objective grounds" for detention). But see *United States v. Manuel*, 992 F.2d 272, 274 (10th Cir. 1993) (noting that *Royer* held the exercise of a right to refuse consent *alone* cannot be the basis to formulate reasonable suspicion).

The deputies had no other reason to believe that additional evidence would be found on Johnson's person or, having searched his person and discovered nothing suspicious, that there would be additional evidence to be found in his wallet.

The issue, therefore, is whether marijuana found in a vehicle, absent any additional evidence or a lawful arrest, can give rise to probable cause to search inside Johnson's wallet. In *United States v. Di Re*, 332 U.S. 581 (1948), the Supreme Court found that probable cause to search a vehicle did not automatically give rise to probable cause to search the passengers inside of the vehicle. The Court did not decide, however, whether evidence found in a vehicle during a search supported by probable cause (or, presumably, any lawful search, including a consent search of the vehicle) might then give rise to probable cause to search the vehicle's occupants.

A number of cases have approved a search of the person after a search of a vehicle, but all of these cases ground the validity of the search of the person on the principle of a search incident to arrest, with the probable cause for arrest being based on evidence discovered during the vehicle search. *See e.g., Farrow v. Commonwealth*, 31 Va. App. 517, 520–21 (2000). These cases do not support the proposition that evidence lawfully discovered in a vehicle gives rise to probable cause to *search* the individuals if the officers choose not to *arrest* the individuals on the basis of this evidence (or, as in this case, if the officers do not arrest the individuals because state law does not permit the arrest). Indeed, this Court has found no cases in Virginia where evidence found during a vehicle search gave rise to probable cause to search the vehicle's occupants when the officer did not arrest the occupants and search them incident to that arrest. Our Supreme Court has declared, "if the arresting officer had no probable cause to arrest, then he could not lawfully search the defendant's person." *Bryson v. Commonwealth*, 211 Va. 85, 87 (1970) (citing *Rios v. United States*, 364 U.S. 253 (1960)). And the Court of Appeals has stated that it is the fact of a lawful arrest that renders valid a warrantless search of the person in custody. *Ross v. Commonwealth*, 35 Va. App. 103, 105–06 (2001) (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)).

In the present case, absent certain extenuating circumstances, the law of the Commonwealth required the officers to issue Johnson a summons for possession of marijuana rather than making a custodial arrest. Va. Code § 19.2-74. Consistent with their statutory obligation, the officers did not, in fact, arrest Johnson for possession of marijuana; indeed, they did not arrest him until after Roane had searched the wallet and found the methamphetamine, which was the basis for his arrest. To be sure, the search incident to arrest exception is not rigid with respect to whether the search or the arrest takes place first. *See Carter v. Commonwealth*, 9 Va. App. 310, 312 (1990) ("So long as probable cause to arrest exists at the time of the search . . . it is unimportant that the search preceded the formal arrest if the arrest followed quickly on the heels of the challenged search.") (internal quotations and citations omitted). However, "[p]robable cause to arrest must exist exclusive of the incident search." *Id.* That is, "an incident search may not precede an arrest and serve as part of its justification." *Smith v. Ohio*, 494 U.S. 541, 543 (1990). Based on the evidence before this Court, it plainly appears that Johnson's arrest was predicated upon the fruits of the search of his wallet, the meth tablets; therefore, the search of Johnson's wallet could not be a search incident to his arrest. Rather, his arrest on a felony charge was the result of a non-consensual and warrantless search.

The Commonwealth relies on *Virginia v. Moore*, 553 U.S. 164 (2008). The heart of the United States Supreme Court's decision in *Moore* regarding an arrest in violation of the statute of the Commonwealth is this: "Virginia chooses to protect individual privacy and dignity more than the Fourth Amendment requires, but it also chooses not to attach to violations of its arrest rules the potent remedies that federal courts have applied to Fourth Amendment violations. Virginia does not, for example, ordinarily exclude from criminal trials evidence obtained in violation of its statutes. Moore would allow Virginia to accord enhanced protection against arrest only on pain of accompanying that protection with federal remedies for Fourth Amendment violations, which often include the exclusionary rule. States unwilling to lose control over the remedy would have to abandon restrictions on arrest altogether. This is an odd consequence of a provision designed to protect against searches and seizures." *Moore*, 553 U.S. at 174 (internal citation omitted). There, the United States Supreme Court held that police officers did not violate the Fourth Amendment when they performed a search incident to an arrest that was improper under Virginia Code § 19.2-74, the same statute involved in the present case. *Id.* at 164. That decision reversed the Virginia Supreme Court which had concluded that officers could not conduct an incident search of Moore because it was predicated on an arrest that was inconsistent with the Virginia Code, which, as noted, requires an officers to issue a summons in lieu of arrest for certain misdemeanor offenses. This statute states in part "Whenever any person is detained by or is in the custody of an arresting officer for any violation

committed in such officer's presence which offense is . . . punishable as a Class 1 or Class 2 misdemeanor or any other misdemeanor for which he may receive a jail sentence, except as otherwise provided in Title 46.2, or for offenses listed in subsection D of § 19.2-81 . . . the arresting officer *shall* take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. Upon the giving by such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody." Va. Code Ann. § 19.2-74(A) (emphasis added).

Thus, the Virginia Supreme Court determined that the officers were wrong under Virginia law to arrest Moore because they should have simply issued him a summons. Relying on *Knowles v. Iowa*, 525 U.S. 113, 118–19 (1998), in which the United States Supreme Court held that the mere issuing of a summons or citation does not give rise to the same constitutional authority to search as an arrest, the Virginia Supreme Court reasoned that, because the arresting officers should have issued Moore a citation under state law and the Fourth Amendment does not permit a warrantless search incident to citation, the arrest search violated the Fourth Amendment. *Moore v. Commonwealth*, 272 Va. 717, 725 (2006).

The United States Supreme Court rejected an implicit premise in our Court's reasoning by reaffirming that the reasonableness of a search or seizure under the Fourth Amendment is not determined by state law restrictions. That is, Virginia's choice to require a summons in lieu of arrest for certain offenses has no bearing on Fourth Amendment probable cause analysis. The Fourth Amendment authorizes an arrest based "on probable cause to believe a law has been broken in the presence of the arresting officer." *Moore*, 553 U.S. at 178. The degree of the offense is irrelevant: "The rule extends even to minor misdemeanors. . . ." *Id.* In summary, the United States Supreme Court concluded "that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that, while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at 176. Thus, the Court held that, even though the arrest was unlawful under Virginia law, it nonetheless did not violate the Fourth Amendment, and therefore the search of Moore was reasonable as a search incident to arrest.

The Commonwealth's reliance on *Moore* is misplaced. Had the deputies in this case actually been in the process of arresting Johnson for possession of marijuana (even though the arrest would have violated the statute), as the officers did in *Moore*, the search incident to that arrest would have been lawful under *Moore*. But it is uncontested that the deputies did not arrest Johnson for possession of marijuana, either prior to or subsequent to the search. Unless the deputies had unlawfully (but not unconstitutionally) arrested Johnson for possession of marijuana, the *Moore* reasoning does not

apply; the decision of the United States Supreme Court turned on the search being within the bounds of the Fourth Amendment *because* it was conducted incident to an arrest. Thus, under the rationale in *Moore*, Roane and Carter apparently had probable cause to arrest Johnson (notwithstanding that the arrest would violate Virginia law). But unlike the officers in *Moore*, Roane and Carter, to their credit, heeded Virginia law and did not arrest Johnson for possession of marijuana. Without such an arrest, there can be no search incident to arrest, and the search is not valid under the incident exception.

I am mindful of the irony in this conclusion: the officers' conduct in searching is constitutional only if they flout state law by arresting when the Code prohibits it. By respecting state law and not arresting Johnson for possession of marijuana, the officers have violated the Fourth Amendment. While this is an unfortunate paradox, because the justifications for a search incident to arrest are absent, I am constrained by the law as it has been presented to me.

I emphasize what is implicit in the above analysis. It is immaterial that Roane and Carter had probable cause under the Fourth Amendment to arrest Johnson. Probable cause to arrest, by itself and without an arrest in-fact based on that probable cause, does not give rise to the sorts of concerns that justify application of the search incident arrest exception. The interests justifying a search incident to arrest are that it "enables officers to safeguard evidence, and, most critically, to ensure their safety during 'the extended exposure which follows the taking of a suspect into custody and transporting him to the police station'." *Moore*, 553 U.S. at 177 (quoting *United States v. Robinson*, 414 U.S. 218 [1973]). These concerns justify application of the incident exception only when an officer makes a lawful (as judged under the Fourth Amendment) arrest; *i.e.* an arrest based on probable cause. *See id.* ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; *that intrusion being lawful*, a search incident to the arrest requires no additional justification."). The Court's rationale in *Knowles* is a corollary to this principle. "Officers issuing citations do not face the same danger, and we therefore held in *Knowles v. Iowa*, 525 U.S. 113, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998), that they do not have the same authority to search." *Id.* In short, the justifications for incident exception to the warrant requirement are present only when there is an arrest, not when there is a summons or even probable cause to arrest.

The deputies did not take Johnson into custody on the charge of possession of marijuana; indeed, they did not take him into custody at all until Roane had searched him and found the meth tablets, and they then arrested him for possession of those tablets. As noted earlier, "[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification." *Smith v. Ohio*, 494 U.S. 541, 543 (1990). *See also Bryson v. Commonwealth*, 211 Va. 85, 87 (1970) ("Probable cause must exist before the warrantless arrest, and an incident search may not precede and serve

to justify the arrest.") (citing *Henry v. United States*, 361 U.S. 98 (1959)). The deputies did not have a search warrant, nor did they have Johnson's consent. Absent a warrant, consent, or an arrest, under the circumstances of this case, the search of Johnson's wallet and subsequent retrieval of the methamphetamine tablets were unreasonable and in violation of the Fourth Amendment.

This case is analogous to *Harris v. Commonwealth*, 241 Va. 146 (1991). In that case, during the course of a *Terry* search at a roadside stop, the officer felt a hard item which, when examined, was a film canister. Without Harris' consent, the officer opened the canister and found what proved to be cocaine. Despite the officer's opinion that the canister contained drugs and despite the Commonwealth's argument that the officer had probable cause to search it, the Court held that, at best, the officer had a "hunch" and, by definition, not probable cause. Clearly, if an officer may not open a closed container discovered in the course of a *Terry* search without having discovered something during the course of the *Terry* search of the suspect's person that would give him probable cause to believe that the container held contraband, an officer may not, after consent to a consensual search has been legitimately withdrawn, search a wallet without having first discovered something during the search of the suspect's person, as opposed to his vehicle, that would justify a more intrusive search.

## Conclusion

Because of the foregoing analysis, this Court finds that Johnson did not give consent to search his wallet and the deputies did not have probable cause sufficient to justify looking in his wallet. Therefore, the Defendant's motion to suppress the evidence is granted.